HOLLY ACKERMAN, )
)
          Plaintiff, )
   v. )
)
GASTON COUNTY SCHOOLS; JOSH )
CRISP, in his official capacity as Chair of the )
Gaston County Board of Education; DOT )
CHERRY, in her official capacity as Vice )
Chair of the Gaston County Board of )
Education; LEE DEDMON, TOD KINLAW, )
ROBBIE LOVELACE, BRENT MOORE, )
JEFF K. RAMSEY, JANNA SMITH, and )
A.M. STEPHENS, III, in their official )
capacities as members of the Gaston County )
Board of Education; and MORGEN A. )
HOUCHARD, in his official capacity as )
Superintendent of Gaston County Schools, )
)
          Defendants. )
)

## COMPLAINT

1. Plaintiff Holly Ackerman was a beloved Gaston County public school teacher who devoted her career to helping students with special needs. In her personal time, Ackerman posted a comment on Facebook about the death of Charlie Kirk. The comment had no impact on Ackerman's teaching or the school district's ability to educate students. Nevertheless, Defendants suspended and then terminated Ackerman based on the post, in violation of her First Amendment rights. Ackerman brings this action to recover damages and obtain injunctive relief for the violation of her rights under the United States Constitution.

## PARTIES

2. Plaintiff Holly Ackerman is a citizen and resident of Gaston County, North Carolina. She was an exceptional children's teacher at Webb Street School in Gastonia, North Carolina, until her termination on November 7, 2025.

3. Defendant Gaston County Schools is a public school district organized under the laws of North Carolina. Gaston County Schools employed Ackerman has a teacher until her termination on November 7, 2025.

4. Defendant Josh Crisp is Chair of the Gaston County Board of Education, and is sued in his official capacity as Board Chair. Upon information and belief, Crisp is a citizen and resident of Gaston County.

5. Defendant Dot Cherry is Vice-Chair of the Gaston County Board of Education, and is sued in her official capacity as Board Vice-Chair. Upon information and belief, Cherry is a citizen and resident of Gaston County.

6. Defendant Lee Dedmon is a Member of the Gaston County Board of Education, and is sued in his official capacity as a Board Member. Upon information and belief, Dedmon is a citizen and resident of Gaston County.

7. Defendant Tod Kinlaw is a Member of the Gaston County Board of Education, and is sued in his official capacity as a Board Member. Upon information and belief, Kinlaw is a citizen and resident of Gaston County.

8. Defendant Robbie Lovelace is a Member of the Gaston County Board of Education, and is sued in her official capacity as a Board Member. Upon information and belief, Lovelace is a citizen and resident of Gaston County.

9.      Defendant Brent Moore is a Member of the Gaston County Board of Education, and is sued in his official capacity as a Board Member. Upon information and belief, Moore is a citizen and resident of Gaston County.

10.     Defendant Jeff K. Ramsey is a Member of the Gaston County Board of Education, and is sued in his official capacity as a Board Member. Upon information and belief, Ramsey is a citizen and resident of Gaston County.

11.     Defendant Janna Smith is a Member of the Gaston County Board of Education, and is sued in her official capacity as a Board Member. Upon information and belief, Smith is a citizen and resident of Gaston County.

12.     Defendant A.M. Stephens, III is a Member of the Gaston County Board of Education, and is sued in his official capacity as a Board Member. Upon information and belief, Stephens is a citizen and resident of Gaston County.

13.     Defendant Morgen Houchard is the Superintendent of Gaston County Schools, and is sued in his official capacity as Superintendent. Upon information and belief, Houchard is a citizen and resident of Gaston County.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction under 28 U.S.C. § 1331 and § 1343.

15.     Venue is proper under 28 U.S.C. § 1391(b) because all Defendants reside in, and the events occurred in, this district and division.

## JURY DEMAND

16.     Plaintiff demands a trial by jury on all issues and claims set forth in this Complaint, pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).

3

# FACTS

17.     Holly Ackerman was born and raised in Gaston County. She lives in Gastonia with her two daughters and her husband.

18.     Ackerman became interested in teaching children with disabilities after her daughter was diagnosed with autism spectrum disorder. Ackerman saw firsthand how dedicated educators made a meaningful impact in her daughter's life.

19.     In 2018, Ackerman started working as a teaching assistant at Webb Street School ("Webb Street"), part of Gaston County Schools. Webb Street is a public school offering an extended curriculum for students ages 5–22 with moderate to severe disabilities. These students exhibit challenging behaviors and are unable to learn in a traditional classroom setting.

20.     Ackerman excelled as a teaching assistant at Webb Street. Ackerman often worked with the students aged 18–22, who pose particular challenges due to their age and significant disabilities. Ackerman brought an exceptional degree of compassion, understanding, and respect in teaching these specific students.

21.     In 2020, while she was continuing to work as a teaching assistant, Ackerman began taking courses at East Carolina University to obtain her degree in teaching. Part of her coursework involved student-teaching at Webb Street.

22.     In 2023, Ackerman graduated with a bachelor's degree in special education and obtained her North Carolina educator's license for exceptional children education, with a focus on adapted learning.

23.     In the fall of 2023, Ackerman began working as an exceptional children's teacher. Because there was not an opening at Webb Street then, Ackerman worked at Hunter Huss High School in Gaston County, during the 2023-24 and 2024-25 school years. Ackerman received

4

positive performance evaluations describing her as a "fantastic teacher" who was "very considerate of the needs of her students," and who "makes them comfortable and 'seen' in her classroom."

24.     In August 2025, Ackerman returned to Webb Street to work as an exceptional children's teacher for the 2025-26 school year. She taught in the "transitions program," for students aged 18–22, helping students with disabilities learn job skills, functional skills, and skills for independent living.

25.     Ackerman was widely respected and admired by her colleagues at Hunter Huss High School and Webb Street. She consistently received excellent performance evaluations. Ackerman did not have any disciplinary issues before September 2025.

26.     Ackerman was careful not to discuss her political views in her classroom or at work. She had a private Facebook page that she used to keep in touch with friends and family. Ackerman was not "Facebook friends" with any of her students or their parents. She generally avoided posting about her political opinions on her Facebook page.

27.     On September 10, 2025, Ackerman left work at about 4:00 pm and went home. At home, she used her personal cellphone to look at Facebook. While looking at her Facebook feed, Ackerman came across a post by an acquaintance who was friends with Ackerman on Facebook.

28.     The post was a link to a news article about the shooting of Charlie Kirk—a media personality and conservative political activist who been shot earlier that afternoon while speaking on a college campus in Utah.

29.     Above the article, the acquaintance posted a quote from Kirk, which stated, in substance: "It's worth to have the cost of, unfortunately, some gun deaths every single year so

5

that we can have the Second Amendment." Kirk made the comment following a 2023 school shooting in Nashville.

30.     Ackerman strongly disagreed with Kirk's viewpoint on gun violence and the Second Amendment. As a teacher and parent, she was offended by Kirk's comment that gun deaths, including deaths resulting from school shootings, could be justified in any way, including by the Second Amendment.

31.      Ackerman expressed her disagreement with Kirk's views by commenting on the post she saw: "I can't believe people are actually mourning this douchebag." Ackerman believed that her comment was not viewable by the public.

32.     Minutes later, a screenshot of Ackerman's comment was widely shared on social media. The screenshot included the news article about Kirk's shooting and Ackerman's comment but omitted Kirk's quote regarding the Second Amendment. Ackerman received an onslaught of texts and Facebook messages from people she did not know throughout the evening. After realizing that her comment had upset others, Ackerman swiftly removed it and apologized in several message responses.

33.     After Ackerman's comment was disseminated, Gaston County school officials received emails and calls from people demanding Ackerman's termination because of her comment. Many of the people demanding Ackerman's termination were from outside of North Carolina. None of the people demanding Ackerman's termination personally knew her.

34.     None of Ackerman's colleagues or students, and none of the parents of her students, demanded her termination or expressed concerns regarding her Facebook comment. To the contrary, parents of Ackerman's students reached out to school officials in support of her continued employment. One parent wrote to the school stating that her child "genuinely looked

6

forward to going to school every day with [Ackerman]." Another wrote to the school stating that her child "adore[d]" Ackerman.

35. Ackerman's colleagues also wrote to school officials in support of her continued employment. One of Ackerman's colleagues wrote that "[Ackerman's] students absolutely love her . . .[s]he meets them with compassion and a deep understanding of their complex needs." Another colleague wrote that Ackerman's "passion for teaching shines through in everything she does. Her dedication to helping students learn, grow, and succeed is evident, and her encouragement allows them to truly thrive."

36. On September 11, 2025, the school district suspended Ackerman with pay from her position at Webb Street pending investigation into her social media comment. Ackerman received written notice of her suspension on September 12.

37. There were no disturbances to the classes or activities at Webb Street or at any other Gaston County school in the days following Ackerman's Facebook comment.

38. On September 15, 2025, the Gaston County Board of Education held a regular meeting. Three people spoke during public comments in support of Ackerman's continued employment at Webb Street. Only one person spoke in favor of her termination. Other than these four speakers, there was no other discussion about Ackerman's employment. The people who spoke about Ackerman did not disturb the ordinary proceedings of the Board meeting.

39. On September 18, 2025, Defendant Houchard issued Ackerman a written notice of charges regarding her Facebook post on September 10. The charges alleged that Ackerman's post violated Gaston County Board of Education policies.

7

40. Ackerman met with Houchard to discuss the charges that same day. Ackerman told Houchard that she made her comment in response to Kirk's stance on gun violence, and that she made the comment on her personal device, at home, during non-work hours.

41. On September 23, 2025, Houchard issued Ackerman a notice that he officially recommended her dismissal from Gaston County Schools. He also suspended her without pay. Houchard's notice stated he was recommending Ackerman's dismissal because of her Facebook post. He alleged that the post "has caused and continues to cause significant disruption in the regular and efficient operation of the school and district-at-large."

42. Pursuant to N.C. Gen. Stat. § 115C-325.6, Ackerman requested a hearing before the Gaston County Board of Education regarding Houchard's recommendation of her dismissal.

43. The Board of Education held a hearing regarding the recommendation of Ackerman's dismissal on November 5, 2025.

44. At the hearing, in support of his dismissal recommendation, Houchard presented evidence that school officials received emails and calls regarding Ackerman's Facebook post. The district's Human Resources Executive Director testified that she spent time dealing with the emails and calls regarding Ackerman. Houchard did not present any evidence showing that Ackerman's post caused any disruption to Webb Street's operations or its students.

45. Several Webb Street teachers testified at the hearing. They testified that Ackerman was an excellent teacher who never discussed political topics in the classroom. They testified that Ackerman's students were not even aware of Ackerman's Facebook post, let alone negatively impacted by it. They testified that the only adverse impact on Ackerman's students from this controversy was her absence from the classroom during her suspension. Houchard did not present any evidence disputing the teachers' testimonies.

46.     Following the hearing, the Board of Education voted to adopt Houchard's dismissal recommendation and terminated Ackerman's employment with Gaston County Schools. On November 7, 2025, the Board notified Ackerman of its decision.

47.     Ackerman was acting as a private citizen when she posted a comment about Kirk on Facebook. Ackerman posted her comment because she disagreed with Kirk's views on the Second Amendment and gun control, both of which are matters of public concern.

48.     Ackerman's single comment on Facebook did not cause any actual disruption to the staff, students, or operations at Webb Street. Ackerman's comment did not materially affect the educational mission of Webb Street or Gaston County Schools.

49.     Ackerman's comment did not interfere with or impair Ackerman's ability to teach her students or work with her colleagues.

50.     Defendants terminated Ackerman's employment with Gaston County Schools because of her Facebook post on September 10, 2025.

## FIRST CAUSE OF ACTION
### (U.S. Const. Amend. I, XIV)

51.     The allegations in the preceding paragraphs are incorporated by reference.

52.     This claim under the First and Fourteenth Amendments to the U.S. Constitution is brought against all Defendants.

53.     Ackerman posted a Facebook comment using her personal device during non-work hours. She posted a comment expressing her disagreement with a public figure's views on gun violence and the Second Amendment.

54.     Through her Facebook post, Ackerman spoke as a private citizen on a matter of public concern. Ackerman's comment was protected activity because she exercised her constitutional right to free speech guaranteed by the First and Fourteenth Amendments.

9

55.     Ackerman's speech did not interfere with the Defendants' interest in providing effective and efficient services to the public. To the extent it did, Ackerman's interest in speaking upon a matter of public concern outweighs the Defendants' interest in providing effective and efficient services to the public.

56.     Defendants, acting under color of law, suspended Ackerman without pay and then terminated Ackerman because of her Facebook post.

57.     Defendants' conduct constitutes retaliation against Ackerman for her speaking out as a private citizen on a matter of public concern, in violation of the First and Fourteenth Amendments.

58.     Defendants' unconstitutional conduct should be enjoined, and Defendants should be ordered to reinstate Ackerman to her position with Gaston County Schools.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983)

59.     The allegations in the preceding paragraphs are incorporated by reference.

60.     This claim under 42 U.S.C. § 1983 is brought against all Defendants.

61.     Ackerman posted a Facebook comment using her personal device during non-work hours. She posted a comment expressing her disagreement with a public figure's views on gun violence and the Second Amendment.

62.     Through her Facebook post, Ackerman spoke as a private citizen on a matter of public concern. Ackerman's comment was protected activity because she exercised her constitutional right to free speech guaranteed by the First and Fourteenth Amendments.

63.     Ackerman's speech did not interfere with the Defendants' interest in providing effective and efficient services to the public. To the extent it did, Ackerman's interest in

10

speaking upon a matter of public concern outweighs the Defendants' interest in providing effective and efficient services to the public.

64. Defendants, acting under color of law, suspended Ackerman without pay and then terminated Ackerman because of her Facebook post.

65. Defendants' conduct constitutes retaliation against Ackerman for her speaking out as a private citizen on a matter of public concern, in violation of the First and Fourteenth Amendments.

66. As a proximate result of Defendants' unconstitutional conduct, Ackerman has suffered damages, including the loss of wages and benefits, emotional distress, humiliation, and loss of reputation.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for the following relief:

1. That the Court declare that Defendants' practices complained of herein are unlawful under the United States Constitution;

2. That the Court enjoin Defendants' unconstitutional conduct and order Defendants to reinstate Ackerman to her position with Gaston County Schools;

3. That the Court enter judgment in favor of Ackerman and against Defendants for Ackerman's compensatory damages in an amount to be determined by a jury, and interest as determined by the Court;

4. That the costs of this action be taxed against Defendants;

5. That the Court award Ackerman reasonable attorneys' fees and expenses as provided in 42 U.S.C. § 1988;

6. That the Court grant Ackerman a trial by a jury; and

11

7.   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

This the 14th day of July, 2026.

PATTERSON HARKAVY LLP

_____/s/ Narendra K. Ghosh_____
Narendra K. Ghosh, NC Bar No. 37649
nghosh@pathlaw.com
Trisha S. Pande, NC Bar No. 53573
tpande@pathlaw.com
100 Europa Dr., Suite 420
Chapel Hill, North Carolina 27517
(919) 942-5200

*Counsel for Holly Ackerman*

12